IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : |
| | : |
| v. | : CRIMINAL NUMBER 23-356-1 |
| | : |
| | : |
| PAUL D. BECKWITH | : |

**O R D E R**

**AND NOW**, this          day of                    , 2023, having considered Defendant Paul D. Beckwith's Motion to Dismiss the Indictment, and the government's response thereto, it is hereby **ORDERED** that Mr. Beckwith's Motion is **GRANTED**.  The Indictment is hereby **DISMISSED** with prejudice.

BY THE COURT:

_____
THE HONORABLE NITZA I. QUIÑONES-ALEJANDRO
United States District Court Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : |
| | : |
| v. | : CRIMINAL NUMBER 23-356-1 |
| | : |
| | : |
| PAUL D. BECKWITH | : |

## MOTION TO DISMISS THE INDICTMENT

Paul D. Beckwith, through counsel, moves to dismiss the one-count Indictment against him, because 18 U.S.C. § 922(g)(1) is unconstitutional both on its face and as applied to him following *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022), and *Range v. Attorney General.*, 69 F.4th 96 (3d Cir. 2023) (en banc). In support, he states as follows:

### INTRODUCTION

In *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, the Supreme Court set forth a text-and-history approach for considering Second Amendment challenges: "When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct," and the government "must then justify its regulation by demonstrating that it is consistent with the nation's historical tradition of firearm regulation." 142 S. Ct. at 2131. Applying that framework, in *Range v. Att'y Gen. United States of Am.*, the *en banc* Third Circuit concluded that 18 U.S.C. § 922(g)(1) is unconstitutional as applied to Mr. Range, an individual with a prior false statement conviction. 69 F.4th at 101. In so holding, the Third Circuit rejected every piece of historical evidence identified by the government, concluding that the government had not pointed to any regulation that was sufficiently similar to § 922(g)(1)'s permanent disarmament of individuals like Mr. Range.

In this case, the government has indicted Mr. Beckwith for possessing a firearm based on several prior Pennsylvania convictions for possession with intent to deliver a controlled substance, a remote aggravated assault conviction (2003); and summary offense of harassment. As the Third Circuit made clear in *Range*, the Second Amendment covers Mr. Beckwith and his possession of a firearm, and it is the government's burden to demonstrate that permanent disarmament of Mr. Beckwith is consistent with the nation's historical tradition of firearm regulation. The government will not be able to meet its burden here. Indeed, *Range* specifically rejected all the historical arguments that the government has so far marshaled in *Bruen*'s wake to defend its claimed power to forever disarm all Americans convicted of felonies and even certain misdemeanors. At least as applied to Mr. Beckwith therefore, § 922(g)(1) flunks *Bruen's* text-and-history test.

The Court could stop there. But Count One of the Indictment also fails because § 922(g)(1) is unconstitutional on its face—not just when applied to people like Mr. Range or Mr. Beckwith. That is so for three reasons:

First, as has become clear since *Bruen*, § 922(g)(1) runs afoul of the Second Amendment when applied to *anyone*, regardless of their criminal history. That's because the statute's prohibition on felons possessing handguns is a modern innovation with no pre-twentieth-century analogue. And that means the government will never be able, in this or any case, to point to any founding-era history of broadly and permanently disarming people convicted of felonies. Nor will the government be able to point to any historical tradition of attaching penal consequences as severe as those provided by § 922(g) for a purely possessory offense.

Second, and alternatively, if the Court believes that certain criminal convictions could, in theory, justify disarmament under *Bruen*'s framework, § 922(g)(1) would then be void for

2

vagueness and thus still facially unconstitutional.  That is, the statute criminalizes a great deal of conduct that is constitutionally protected but without notice of where to draw the constitutional line.  Because § 922(g)(1) fails to give ordinary people fair warning of what conduct is subject to punishment, it is unconstitutionally vague.

Finally, though presently foreclosed by precedent, Mr. Beckwith asserts for preservation purposes that § 922(g)(1) is also inconsistent with the original public meaning of the Constitution's Commerce Clause—as alluded to by Judge Porter's concurring opinion in *Range*.

Under a faithful application of *Bruen, Range*, and the Second Amendment, Mr. Beckwith's indictment must be dismissed.

## RELEVANT BACKGROUND

Paul D. Beckwith was arrested on May 22, 2023 and charged locally in Philadelphia County.  On August 15, 2023, the government filed a single count indictment charging Mr. Beckwith with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1) (Count One).  Mr. Beckwith has previous felony cases from the Commonwealth of Pennsylvania that resulted in convictions including, conspiracy and possession with intent to distribute [CP07CR1692-2018]; summary harassment [CP-40-CR-1310-2020];[1] aggravated assault [CP51-CR-207121-2001]; possession with intent to distribute [CP-51-314871-2003]; possession with intent to distribute [CP 51-CR-201962-2006]; fleeing and eluding police [MC51-CR-822731-2002].

---

[1] The summary offense of harassment is not a disqualifying offense under 18 U.S.C. § 922(g)(1), as it is not punishable by more than two years.  *See* 18 U.S.C. § 921(a)(20)(B).

# ARGUMENT

## I. Section 922(g)(1) is unconstitutional as applied to Mr. Beckwith

The Second Amendment protects the right of "the people" to "keep and bear Arms." U.S. Const. amend. II. Section 922(g)(1), however, makes it unlawful for "any person . . . who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year" to "possess in or affecting commerce, any firearm or ammunition." 18 U.S.C. § 922(g)(1).[2] As the Third Circuit recently made clear, Mr. Beckwith is a member of "the people," and the conduct proscribed by § 922(g)(1) is protected by the Second Amendment.[3] *Range*, 69 F.4th at 103. The government therefore bears the burden to establish a robust tradition of founding-era firearm regulation sufficiently similar to § 922(g)(1). *Bruen*, 142 S. Ct. at 2131, 2136. But, as the Third Circuit's recent en banc decision in *Range* reflects, the government will not be able to identify a longstanding historical tradition of disarming "people like" Mr. Beckwith. *Range*, 69 F.4th at 106. The indictment must therefore be dismissed.

### A. *Bruen* held that the Second Amendment requires a text-and-history approach.

In *Bruen*, the Supreme Court rejected the means-end scrutiny that lower courts had previously applied in Second Amendment cases. Instead, the Supreme Court held that the Second Amendment requires a text-and-history analysis. As the Third Circuit recently explained, "[a]fter *Bruen*, we must first decide whether the text of the Second Amendment applies to a person and his proposed conduct." *Id.* at 101. "If it does, the government now bears the burden of proof: it 'must affirmatively prove that its firearms regulation is part of the

---

[2] The prohibition reaches offenses graded as misdemeanors under Pennsylvania law that are punishable by more than two years. *See* 18 U.S.C. § 921(a)(20)(B).

[3] The government has not contested the defendants are a member of "the people" in their responses to other similar motions to dismiss filed by the defense in other gun cases.

historical tradition that delimits the outer bounds of the right to keep and bear arms.'" *Id.* (quoting *Bruen*, 142 S. Ct. at 2127). "Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's unqualified command." *Bruen*, 142 S. Ct. at 2126 (internal quotation marks omitted).

### B. The plain text of the Second Amendment covers Mr. Beckwith and the conduct criminalized by § 922(g)(1).

The threshold question under *Bruen* is "whether the text of the Second Amendment applies to a person and his proposed conduct." *Range*, 69 F.4th at 101. *Range* settles that question for this case. Mr. Beckwith is, like all Americans, one of the "the people" whom the Second Amendment protects. *Id.* at 101-03. Further, the conduct prohibited by § 922(g)(1)—possession of a firearm—falls squarely within the heartland of the Second Amendment. *See id.* at 103. As a result, "the Constitution presumptively protects that conduct." *Id.*

Very recently, Judge Wilson in the Middle District of Pennsylvania dismissed two indictments under *Range* and *Bruen* where the defendants had four prior convictions for possession with intent to deliver heroin and cocaine, *United States v. Quailes*, No. 1:21-CR-0176, 2023 U.S. Dist. LEXIS 147657, at *1-2 (M.D. Pa. Aug. 22, 2023), and "at least 13 prior felony [] convictions" including for robbery and drug trafficking offenses, *United States v. Harper*, No. 1:21-CR-0236, 2023 U.S. Dist. LEXIS 155822, at *2 (M.D. Pa. Sept. 1, 2023), respectively, holding that the government failed to meet its burden of establishing "that Section 922(g)(1) is consistent with the Nation's 'historical tradition of firearm regulation'" as applied to the defendants.[4] 2023 U.S. Dist. LEXIS 147657, at *1-2; 2023 U.S. Dist. LEXIS 155822, at *1.

---

[4] The government has appealed Judge Wilson's decisions, which have been assigned Third Circuit Case Nos. 23-2533 (*Quailes*) and 23-2604 (*Harper*).

Although Quailes and Harper are "not like Range" when their various convictions are compared to Range's singular conviction for false statements to obtain food stamps, "it is not sufficient to simply distinguish the facts of the cases because that does not answer the question of whether the criminalization of firearm possession by [Quailes and/or Harper] is constitutional." *Quailes*, 2023 U.S. Dist. LEXIS 147657, at *18; *Harper*, 2023 U.S. Dist. LEXIS 155822, at *17. The same is true for Mr. Beckwith whose convictions are "not like Range['s]" but nevertheless require an individualized *Bruen*/*Range* analysis. *Quailes*, 2023 U.S. Dist. LEXIS 147657, at *18; *Harper*, 2023 U.S. Dist. LEXIS 155822, at *17.

Judge Wilson rejected the government's argument that the defendant is required to allege he possessed the firearm for a lawful purpose, such as self-defense. The Court stated:

> In a criminal case, a defendant accused of illegal possession of a firearm pursuant to Section 922(g) cannot be required to state his purpose for possessing a firearm without simultaneously admitting the possession, which is an element of the offense. The crux of the Section 922(g)(1) charge is that the mere possession of a firearm is a criminal act due to the defendant's status as a convicted felon. Accordingly, there cannot be a requirement for the defendant to state his purpose for possessing the firearm. Rather, as suggested by Quailes, the court will accept the conduct alleged in the indictment as true for purposes of making this determination. Quailes' possession of a firearm is conduct covered by the plain text of the Second Amendment: "[T]he right of the people to keep and bear Arms, shall not be infringed."

*Quailes*, 2023 U.S. Dist. LEXIS 147657, at *21-22 (citing *United States v. Bullock*, No. 3:18-CR-165-CWR-FKB, 2023 U.S. Dist. LEXIS 112397, at *28 (S.D. Miss. June 23, 2023)) (alteration in *Quailes*); *see also Harper*, 2023 U.S. Dist. LEXIS 155822, at *20-21. The Court also rejected the government's argument that Quailes's and Harper's statuses as state parolees rendered the Second Amendment inapplicable to them, reasoning that this argument "puts the cart before the horse." *Quailes*, 2023 U.S. Dist. LEXIS 155822, at *22; *Harper*, 2023 U.S. Dist. LEXIS 155822, at *22-23. "[T]he fact that [Quailes and Harper] may have violated the

6

conditions of [their] state parole by possessing the firearm[s]—as well as allegedly violating federal law by possessing the firearm[s] due to [their] status[es] as [] convicted felon[s]—does not answer the question of whether [their] conduct of possessing the firearm[s] is covered by the Second Amendment." *Quailes*, 2023 U.S. Dist. LEXIS 155822, at *22-23; *Harper*, 2023 U.S. Dist. LEXIS 155822, at *22. [5]

For all the aforementioned reasons, the Second Amendment covers Mr. Beckwith and his alleged possession of a firearm. *See Quailes*, 2023 U.S. Dist. LEXIS 155822, at *23 ("For the reasons already explained, Quailes' possession of a firearm is conduct covered by the plain text of the Second Amendment."). It is the government's burden to prove that § 922(g)(1) is consistent with this Nation's historical tradition of firearms regulations. It cannot meet that burden for the reasons set forth below.

### C. The government will not be able to prove that § 922(g)(1)'s application to Mr. Beckwith is consistent with this Nation's historical tradition of firearm regulation.

Because the Second Amendment covers Paul D. Beckwith and the conduct barred by § 922(g)(1), the government has the burden to "affirmatively prove" that § 922(g)(1)'s application to him "'is consistent with the Nation's historical tradition of firearm regulation.'" *Range*, 69 F.4th at 96, 101. In other words, "[t]o preclude [Mr. Beckwith] from possessing firearms, the [g]overnment must show that § 922(g)(1), as applied to him, is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id.* at 103 (internal quotation marks omitted). The government will not be able to do so.

To establish that a law is "consistent with the Nation's historical tradition of firearm regulation," *Bruen*, 142 S. Ct. at 2130, the government must prove one of two things, depending

---

[5] The defense acknowledges that several contrary opinions have been issued by several district judges in the Eastern District of Pennsylvania.

on whether the problem addressed by the law is old or new. On one hand, if "a challenged regulation addresses a general societal problem that has persisted since the 18th century," the government must identify a tradition of "distinctly similar" founding-era regulations. *Id.* at 2131; *see also Range*, 69 F.4th at 103. On the other hand, if a regulation addresses a problem that was "unimaginable at the founding," the government may instead "reason[] by analogy" and prove that the regulation is "relevantly similar" to founding-era historical analogues. *Bruen*, 142 S. Ct. at 2132; *see also Range*, 69 F.4th at 103. The "central considerations" in deciding whether a modern regulation is "relevantly similar" to a historical analogue are "whether modern and historical regulations impose a comparable burden on the right of armed self-defense [*i.e.,* the 'how'] and whether that burden is comparably justified [*i.e.,* the 'why']." *Bruen*, 142 S. Ct. at 2132-33; *see also Range*, 69 F.4th at 103.

Because § 922(g)(1) does not address a problem that was unimaginable at the founding, the government bears the burden to identify *distinctly* similar founding-era regulations. But regardless of which burden it bears, the government will not be able to identify any tradition of firearm regulation similar to § 922(g)(1)'s application to Mr. Beckwith here. The Third Circuit in *Range* carefully considered and rejected all the historical evidence that has been relied on by the government in other post-*Bruen* litigation to date. To take just one example, *Range* concluded the government could not rely on status-based restrictions on the possession of weapons by certain historically disfavored groups like Catholics and native American peoples because "any such analogy would be 'far too broad.'" 69 F.4th at 105 (quoting *Bruen*, 142 S. Ct. at 2134). So, unless the government can come forward with new historical evidence of an as-of-yet undiscovered tradition of disarming "people like [Mr. Beckwith]," *Range*, 69 F.4th at 106, § 922(g)(1) cannot be constitutionally applied to him.

8

The government cannot rely on language from *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008) indicating nothing in that opinion "should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons . . ." to meet its burden of proving a tradition of distinctly or relevantly similar historical regulations or analogues. Although this language was "repeated in Justice Alito and Justice Kavanaugh's concurring opinions in *Bruen*," *see Quailes*, 2023 U.S. Dist. LEXIS 147657, at *27, the Third Circuit in *Range* rejected this argument. The *Range* majority looked to the 1961 version of § 922(g)(1), which was "passed some 170 years after the Second Amendment's ratification and nearly a century after the Fourteenth Amendment's ratification," and held it does not satisfy the government's burden of demonstrating a "longstanding" regulation "for purposes of demarcating the scope of a constitutional right." *Range*, 69 F.4th at 104; *see also Quailes*, 2023 U.S. Dist. LEXIS 147657, at *27 (citations omitted); *Harper*, 2023 U.S. Dist. LEXIS 155822, at *28 (citations omitted). The *Range* Court also looked to the Federal Firearms Act of 1938, which applied only to violent criminals who were "convicted of a limited set of violent crimes such as murder, rape, kidnapping, and burglary, but extended to both felons and misdemeanants convicted of qualifying offenses." *Range*, 69 F.4th at 104 (citing Pub. L. No. 75-785, §§ 1(6), 2(f), 52 Stat. 1250, 1250-51 (1938) and quoting *United States v. Booker*, 644 F.3d 12, 24 (1st Cir. 2011)) (additional citation omitted). The Court opined it was a "dubious proposition" to suggest the 1938 Act constituted a longstanding tradition "given the *Bruen* Court's emphasis on Founding- and Reconstruction-era sources." *Id.* (citing *Bruen*, 142 S. Ct. at 2136, 2150). The *Range* Court also "noted that the *Heller*, *McDonald* [*v. City of Chicago*, 561 U.S. 742 (2010)], and *Bruen* Courts did not actually cite any 'longstanding prohibitions' because they did not undertake an exhaustive historical analysis of the scope of the Second Amendment." *Quailes*,

2023 U.S. Dist. 147657, at *28 (citing *Range*, 69 F.4th at 103 n. 7); *Harper*, 2023 U.S. Dist. 155822, at *29 (citing same).

The *Quailes* and *Harper* court also rejected the government's argument that disarming drug traffickers and armed robbers is "relevantly similar" to historical regulations disarming those "deemed dangerous," because it failed to present "any argument comparing the 'how and why' of the historical 'dangerousness' regulations with the 'how and why' of Section 922(g)(1)." *Quailes*, 2023 U.S. Dist. LEXIS 147657, at *30; *Harper*, 2023 U.S. Dist. LEXIS 155822, at *31. With respect to the "how" metric, the government failed to compare things such as "the length of time the individuals were disarmed; whether a conviction was required or any other information about how the dangerousness determination was made; or what kind of offenses qualified as dangerous." *Quailes*, 2023 U.S. Dist. LEXIS 147657, at *31; *Harper*, 2023 U.S. Dist. LEXIS 155822, at *32-33. The government also failed regarding the "why" metric because it did not present any argument about the "purpose of the historical regulations." *Quailes*, 2023 U.S. Dist. LEXIS 147657, at *31; *Harper*, 2023 U.S. Dist. LEXIS 155822, at *33. With respect to the argument that Quailes and Harper present a danger to society, Judge Wilson explained that the government's "conclusion rests on dangerousness as the historical 'touchstone' without any explanation of how the earlier regulations compare in mechanics or purpose to Section 922(g)(1)," which is "too broad and does not carry the Government's burden under the *Bruen*/*Range* standard." *Quailes*, 2023 U.S. Dist. LEXIS 147657, at *32-33 (citing *Bruen*, 142 S. Ct. at 2138); *Harper*, 2023 U.S. Dist. LEXIS 155822, at *34 (citing same); *see also Bullock*, 2023 U.S. Dist. LEXIS 112397, at *74 (declining to consider government's violent felonies and dangerousness arguments as untimely, but noting that "[e]ven if the Court considered this argument, it would reject it on the merits.").

Accordingly, the government cannot carry its burden of proving the requisite tradition of distinctly similar regulations or relevantly similar historical analogues permanently disarming individuals convicted of drug trafficking or assault like Mr. Beckwith. The Court should grant this Motion and dismiss the indictment with prejudice. *See, e.g., Bullock*, 2023 U.S. Dist. LEXIS 112397, at *5, *72 (dismissing indictment against felon convicted of aggravated assault and manslaughter stemming from 1992 bar fight and noting that government did not present "any example of how American history supports § 922(g)(1), much less the number of examples *Bruen* requires to constitute a well-established tradition."); *Quailes*, 2023 U.S. Dist. LEXIS 147657 at *2 (dismissing indictment as applied to defendant where he had four prior drug trafficking convictions because government failed to meet its burden); *Harper*, 2023 U.S. Dist. LEXIS 155822, at *1-2 (dismissing indictment as applied to defendant where he had at least 13 prior adult convictions for, among other crimes, drug trafficking and armed robbery).

## II.   Section 922(g)(1) is facially unconstitutional.

Although the Court could confine its analysis to the statute's constitutionality "as applied" to people like Mr. Beckwith, § 922(g)(1) is also unconstitutional on its face.

### A.   Section 922(g)(1) is unconstitutional under the Second Amendment in all its applications.

In *Range*, the appellant raised only an "as applied" challenge to § 922(g)(1), and the Third Circuit had no occasion to consider whether the statute is facially unconstitutional. *Range*, 69 F.4th at 100. But a faithful application of *Bruen* and *Range* compels the conclusion that § 922(g)(1) is unconstitutional on its face. As discussed above, because the Second Amendment's text covers the conduct proscribed by § 922(g)(1), the government bears the burden of establishing a founding-era tradition of disarming individuals with felony convictions. *Id.* at 101. The government has already shown that it will be unable to do so. Put simply, "there are

11

*no* examples of founding, antebellum, or Reconstruction-era federal laws like 18 U.S.C. § 922(g)(1) permanently disarming non-capital criminals." *Range*, 69 F.4th at 106 (Porter, J., concurring) (emphasis added); *see also*, *e.g.*, *Binderup v. Attorney General*, 836 F.3d 336, 368 (3d Cir. 2016) (Hardiman, J., concurring, joined by Fisher, Chagares, Jordan, and Nygaard, JJ.) ("[T]he Founding generation had no laws denying the right to keep and bear arms to people convicted of crimes[.]") (original alteration marks and citation omitted).

Because there is no founding-era history of disarming people convicted of felonies at all, § 922(g)(1) "is unconstitutional in all of its applications." *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449 (2008). The history will not change from case-to-case. *See Range*, 69 F.4th at 116 & n.5 (Shwartz, J., dissenting, joined by Restrepo, J.) (stating majority's approach "rejects all historical support for disarming any felon," dictating conclusion that "bans on violent felons cannot be justified"). And while *Bruen* may not demand a "historical twin" for § 922(g)(1), *see* 142 S. Ct. at 2133, the government has yet to find so much as a long-lost cousin. This Court should recognize that reality and hold that the statute is unconstitutional on its face.

### B.     Section 922(g)(1) is unconstitutionally vague.

If this Court were to conclude (notwithstanding the above) that § 922(g)(1) is not unconstitutional in all applications, the statute then runs into another fatal constitutional flaw: vagueness. After *Range*, § 922(g)(1) can no longer criminalize much of the conduct it purports to outlaw. Indeed, it must now be recognized that there are numerous Americans who fall within the text of the statute because they have previously been convicted of "a crime punishable by imprisonment for a term exceeding one year" but who cannot be disarmed consistent with the Second Amendment. *See Range*, 69 F.4th at 133 (Krause, J., dissenting) ("Under the majority's 'like Range' test … offenders cannot possibly know in advance of a court's retroactive

declaration whether possessing a firearm post-conviction is a constitutional entitlement or a federal felony. As interpreted today by the majority, § 922(g)(1) is rendered so vague as to be facially unconstitutional.").

"In our constitutional order, a vague law is no law at all." *United States v. Davis*, 139 S. Ct. 2319, 2323 (2019). The Constitution requires that federal criminal laws "give ordinary people fair warning about what the law demands of them." *Id.* Section 922(g)(1) does not, because it criminalizes reams of constitutionally protected conduct alongside whatever conduct might arguably be unprotected while providing no guidance for discerning which is which. Where can "ordinary people" with a past criminal conviction look for a "sure way to know" if possessing a gun will expose them to criminal punishment? *Id.* Not to the statute's text: *Bruen* and *Range* make clear that the statute cannot constitutionally be applied as written. Case law likewise provides no guidance: insofar as § 922(g)(1) is not facially unconstitutional, *Range* requires courts to engage in case-by-case, crime-by-crime reasoning to determine whether the person before them is "like Range." *Range*, 69 F.4th at 106.

The consequence is straightforward: The Court must "treat [§ 922(g)(1)] as a nullity and invite Congress to try again." *Davis*, 139 S. Ct. at 2323.

### C. The Supreme Court should revisit its post-New Deal precedent straying from the Commerce Clause's original public meaning.

Finally, as Judge Porter's concurrence in *Range* suggests, the federal government's claimed authority to regulate guns depends on an expansive view of Congress's Commerce Clause power that has little to do with commerce and was largely invented by courts in the post-New Deal era. *See Range,* 69 F.4th at 107-09 (Porter, J. concurring). Admittedly, the Supreme Court's New Deal precedents and their progeny continue to foreclose this Court from second-guessing these decisions' broad view of Congress's power to regulate commerce. *See, e.g.,*

*NLRB v. Jones & Laughlin Steel Corp.*, 301 U.S. 1 (1937). But the Supreme Court has, in more recent decades, gestured toward a more restrained approach. *See, e.g., United States v. Lopez*, 514 U.S. 549 (1995); *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 552 (2012); *see also Alderman v. United States*, 131 S. Ct. 700, 701 (2011) (Thomas, J., joined by Scalia, J., dissenting from denial of certiorari) (urging reconsideration of 1977 decision upholding Congress's authority under Commerce Clause to enact precursor of § 922(g)). Because the Supreme Court could one day "temper" its post-New Deal precedent, Mr. Beckwith asserts for preservation purposes that § 922(g)(1) is inconsistent with the original public meaning of the Constitution's Commerce Clause. *Lopez*, 514 U.S. at 584-85 (Thomas, J. concurring); *see also Range,* 69 F.4th at 107-09 (Porter, J. concurring).

## CONCLUSION

For the foregoing reasons, the Indictment against Mr. Beckwith should be dismissed.

Respectfully submitted,

*/s/Maranna J. Meehan*
MARANNA J. MEEHAN
Assistant Federal Defender

**CERTIFICATE OF SERVICE**

    I, Maranna J. Meehan, Assistant Federal Defender, Federal Community Defender Office for the Eastern District of Pennsylvania, hereby certify that I filed the attached Defendant's Motion to Dismiss the Indictment via the Court's Electronic Filing (ECF) system, which sent notification to Rosalynda Michetti, Assistant United States Attorney, Suite 1250, 615 Chestnut Street, Philadelphia, Pennsylvania 19106, via her email address Rosalynda.Michetti@usdoj.gov.

                                                     */s/  Maranna J. Meehan*
                                                     MARANNA J. MEEHAN
                                                     Assistant Federal Defender

DATE: October 11, 2023